NEW-YORK,
May, 1838.

Clark
v.
Wethey.

CLARK *vs.* WETHEY.

Where in the description of premises in a deed conveying lands, course, and
distance and monument are given, the premises must be located according
to the deed ; and all parol evidence of the intent, the declarations and acts
of the parties, going to establish a different location, is inadmissible as con-
tradicting or varying the deed, unless a possession be shown under claim of
title continued for such length of time as will be a bar to a recovery in an
action of ejectment.

Where, however, from the vagueness or obscurity of the description, or from
the decay or destruction of the monuments referred to in the deed, doubt
and uncertainty exist in the case, the declarations or acts of the parties, or
facts dehors the deed may be shown by parol ; such evidence not contra-
dicting or varying, but coming in aid of the deed.

An actual location different from the deed, but fixed upon by express agree-
ment, is, it seems, obligatory upon the parties ; but a clearing of six acres in
conformity to a line of marked trees upon a course extending 30 chains,
and a possession continued for upwards of 20 years, where such line of
marked trees is not conformable to the courses and distances intended, is
not such evidence of an agreement of location as will bind the parties upon
other portions of the line.

THIS was an action of *trespass quare clausum fregit*, and
for cutting and carrying away fire wood, tried at the Cay-
uga circuit. The ·defendant claimed title to the *locus in quo*
under a deed executed by the plaintiff to Ephraim Wethey,
the father of the defendant, bearing date 18th October,
1804, by which the plaintiff conveyed a farm of about 110
acres, lying in the northeast portion of lot No. 4, Aurelius.
The premises are described in the deed as beginning at the
northeast corner of lot No. 4, running thence west 25 *chains
to a beach tree* standing *in the road,* then south 15 degrees
east 10 chains 15 links *to a stake,* then west 6 chains
46 links *to a stake,* then south 30 chains to a stake,
then east 28 chains 96 links to a basswood tree, then
north 40 chains to a place of beginning, containing 110⅝ acres
of land. On the trial the following facts appeared : The
northeast corner of lot No. 4 was clearly established,
and it was satisfactorily proved that in running the three
first lines according to the courses and distances given in
the deed, the *locus in quo* was on the premises of the plain-

tiff and not within the bounds of the deed executed to
Ephraim Wethey. The plaintiff also proved that at or
near the termination of the first course there formerly stood
a *beech tree*, which had been cut down many years since.
On the part of the defendant it was shown that by length-
ening the *third line* 83 or 84 links, *a line of marked trees*
was reached, which extended from thence the whole dis-
tance .of the fourth course, viz. 30 chains ; that the line so
found appeared to be 30 years old, corresponding with the
date of the deed executed by the plaintiff ; that 25 years
before the trial, Ephraim Wethey cleared a lot of six acres
adjoining the line of marked trees, put it in fence and occu-
pied it until his decease in 1832. That about four years
previous to the trial, Ephraim Wethey interrupted a person
who, by the direction of the plaintiff, was cutting timber *one
rod north* of the old line of marked trees, and that in an in-
terview between the plaintiff and Ephraim Wethey on the
subject of such interruption, the plaintiff *conceded* that the
timber was cut upon the land of which Wethey was the
owner. The plaintiff resided during all this time upon lot No.
4, but the portion of his lands adjoining the clearing of
Wethey remained forest land, and it did not appear that
Wethey had any other clearing on that line besides the six
acre lot. The wood, for the cutting of which the action
was brought was cut north of the line of marked trees, and
the cutting took place, it seems, in 1832 ; subsequent to
which time the plaintiff procured the premises conveyed to
Wethey to be surveyed, and in such survey the *stakes* or
*monuments* at the termination of the *second* and *third* lines
were not *found*, but the points were ascertained. by the
courses and distances given in the deed. The defendant
called as a witness John Haring, who testified that he was
a *surveyor*, that he surveyed the premises conveyed to
Ephraim Wethey and drew the deed executed to him ; that
he had no recollection of marking the trees, but *presumed*
that he marked them, as he had no recollection of ever run-
ning out any land without marking trees or putting up mon-
uments, and *presumed* that the deed was conformable to the
survey. The judge charged the jury that if they were

NEW-YORK,
May, 1838.

Clark
v.
Wethey.

Clark
v.
Wethey.

satisfied that the line of marked trees was made at the time
of the survey and when the deed to Ephraim Wethey was
executed, that such line was established by the parties at
the time of the execution of the deed as the boundary be-
tween them, that possession was taken accordingly, that the
plaintiff had acquiesced in that line as the boundary, and
the defendant and his ancestor had made improvements to
that line with the knowledge and acquiescence of the plain-
tiff, the defendant had made a good defence as to all the
timber cut *east* of the old marked line ; but that no acqui-
escence short of actual knowledge at the time of the estab-
lishment of the line and assent thereto would conclude the
plaintiff; and that therefore, unless they found that the line
was so established by the defendant's ancestor, and acqui-
esced in by the plaintiff, they must find for the plaintiff.
The jury found for the *defendant*. The plaintiff moves for
a new trial.

*M. T. Reynolds*, for the plaintiff.

*I. Williams*, for the defendant.

*By the Court*, COWEN, J.  Taking the title to the defend-
ant's farm to cover no more than what is confessedly in-
cluded in the written boundaries of the deed given by the
plaintiff to Ephraim Wethey, and under which the defendant
claims, there can be no dispute that his defence is an utter
failure.  The place of beginning mentioned in the deed is
agreed upon by both parties.  From that the deed goes
round the farm by specific courses and distances : and pro-
vided these are to be followed, the deed clearly comes short
of the *locus in quo*.  It belongs to the plaintiff.  Such is the
deed, the written title under which Ephraim Wethey en-
tered, and which he and those claiming through him down
to the defendant have asserted as the evidence of their right
to the very period of the trial.  The *beech tree* monument
and the *stakes* mentioned in the deed are gone.  Some evi-
dence was given on the trial in respect to the position of the
beech tree, but none which located it far enough west to

comprehend the *locus in quo*. No line of marked trees there is mentioned in the deed. There is no adverse possession of 25 years set up as a defence.

NEW YORK,
May, 1838.

Clark
v.
Wethey.

Reading and applying the deed acording to its language; looking at the lines and points mentioned in it, and to. all and every thing we can connect with it, there is no doubt in this case. What then is this defence? In plain English the defendant says, " It is true that, following the deed under which I have always claimed and held, I must fail. But the deed is not true. The tract *intended* to be granted was bounded west on the line of marked trees, and my scrivener, Mr. Haring, by mistake, stopped me with courses and distances and the beech tree in the road, whereas he should have gone farther' west and touched and run along the line which he had surveyed for that purpose. Clark, the plaintiff, and Ephraim Wethey intended that the deed should run to and connect itself with the same line. The stopping at the end of the 25 chains, or even at the beech tree, was a sheer mistake in the deed ; and I claim to depart from, to contradict and correct it, by showing the mistake and bringing myself up through parol evidence to the marked line. I will add that the plaintiff has, for the most part of the time since the deed, been silent in respect to the marked line, and a small part of it was, on my side, cleared up to and fenced, without objection on his part, a good many years ago. I therefore ask the jury to infer, that (though palpably in the face of my written title) we have agreed on the more comprehensive boundary." Such is the plain unsophisticated character of the defendant's case ; and I am free to say that it contradicts, and every defence of the kind has always appeared to me to contradict at least two propositions, as well established as any in the law : *In the first place*, to give it effect we must override the statute of frauds. The title to the land lying between the deed and the marked line is as plainly sought to be sold by *parol* as if it were a mile west of the deed. *In the second place*, we must overrule the maxim of the common law which declares that all oral agreements of the parties in respect to the subject matter of the deed shall be merged by it, and such deed cannot be

contradicted by parol. That stands independent of the statute of frauds ; it applies to land contracts and all others. If there were a *mistake* of the scrivener, the true remedy is familiar to the mind of every lawyer who has compared the powers of a court of law with those of equity. On a plain mistake in drawing the deed being established, a court of chancery would interfere and rectify it. The only answer at law would be an adverse possession of 25 years ; the division of which into actual and constructive is well understood and easily applied.

I speak not now of those cases in which time has obliterated the monuments or boundaries of the deed, so as to leave its location a matter of uncertainty ; I speak not of cases in which the carelessness or fraud of the parties, or any other causes may have rendered it impossible to locate the deed by known monuments, or mathematical lines : where this is so, the declarations of the parties or their acts of acquiescence or forbearance were always receivable ; not to contradict or control the deed, but to show where in truth the lost monuments or lines in the deed originally stood. Suppose for instance the deed appears to be bounded by *stakes* alone, which are no longer to be found ; they have been pulled up or have rotted away ; but the party has either actually possessed or claimed according to certain lines ; such act or claim, is admissible to show where they originally stood. A certain course and distance are mentioned in the deed as terminated at an object no longer to be found, as in the instance before us of the beech tree, the line would be prima facie evidence of its position ; but the parties having fixed a different one by agreement as the point where it once stood, the agreed place should control. The reason is because compasses and chains and the skill of surveyors vary, or the face of the country may have put them at fault in their surveys. Course and distance are therefore more uncertain than monuments, and if the law can fasten npon one in any way, it will control both course and distance. The acts of the parties are let in as secondary evidence to supply the *hiatus* which has been created by the ravages of time. But where there is no

need of this; where the primary monument is in full existence or clearly traceable by living witnesses, I ask on what authority can we depart from it? Here stood the beech tree say the witnesses; here stood the beech tree says the twenty-five chain line striking at or near the road where the deed says it stood. All concur in bringing it about 4 rods short of the marked line to which no allusion is made by the deed. This deed has its acknowledged place of beginning, its 25 chains and its beach tree. What power have we to override, all these by going 4 rods west of the point to which they all conspire? Suppose 50 witnesses had told us that both parties declared they intended the marked line by this deed, which tells us the direct contrary; is it the deed or the oral contract and intent which we are to follow? Had it mentioned a stake now gone, and the parties had agreed on the marked line, that would have been no departure from the deed, but evidence that the stake stood there. Had the deed stopped with course and distance, I am at a loss to conceive on what principle we could search for a monument at all. The deed mentioning none, if we are to be governed by that, it gives us the method. It commands us to stop with the 25 chains. I mention this because we are asked to overgo both course and monument. We have a point to pass more difficult than that dictated by distance alone. In either view, the short answer is, we are asked to depart from the deed, and that we can not do.

I am fully aware that there are authorities in this court to the contrary: such was that of *Rockwell* v. *Adams*, recently reviewed in the court for the correction of errors, 16 Wendell 285. There are other cases, but I think they all substantially run into the case cited. In that there was in the deed as here, a known place of beginning and a partial location by fences between the parties on a line variant from the deed, in which they had silently if not actually acquiesced. In that there were indications of an intermediate line corresponding with the fences and acts of the parties in reference to the line, showing their belief that it was a correct one. The whole was put to the jury from which to infer a practical location adverse to the deed, and short of 25 years

in duration. The jury inferred an agreed location, and found contrary to the deed. This court refused a new trial, but the judgment was reversed. I must confess that from the manner in which the cause was handled by the learned judges, who spoke to it in the court for the correction of errors, it is not to be denied that the general doctrine of oral conveyance under the name of practical location appears to be conceded, provided there is evidence so strong as to make out an agreement between the parties; and it is said that a deed may be inferred from acts, in a course of time short of 25 years, such as making expensive improvements on the faith of the wrong line. Some acts of location by third persons in respect to a part of the premises remote from Adams against whom they were thought to operate, were pronounced inadmissible. Indeed, looking at the sources from which we are, in the habit of collecting the principles on which cases in our court of dernier resort turn, it is difficult to say whether the right to vary from the deed is overruled in the abstract, or on the degree of evidence there thought necessary to establish the adverse location, or the kind of evidence by which that was done. The utmost perhaps which can be said is, that the first case which allowed a plain departure from the deed, a case on which all our others of a like character have proceeded, is reversed; and we are therefore left to re-examine it with the more freedom, and pronounce whether in so far as it professed to depart from the deed, it was not a departure from principle. I have already adverted to reasons satisfactory to my own mind why I think it was so. I have also endeavored to show that full room will yet be left for the operation of practical location, and even all acts and declarations within their proper functions. These are when they come in accordance with or as helps to the deed against the gaps and other chances which renders its location difficult or impossible in any other way.

But unless we suppose Adams and Rockwell to have turned entirely upon the admission of improper evidence; on the contrary, if we look to the general proofs in that cause, and suppose the court to have proceeded on the

ground that they were *insufficient*, we then have a direct NEW-YORK, authority for saying that the verdict now in question can May, 1838. not be sustained. The evidence of location is not so strong Brotherton as in that case. There was nothing in Haring's testimony v. from which the jury could be permitted to infer that he surveyed the marked line with a view to the deed ; nor is the case made out by the six acres clearing and the old corresponding line of trees. Against this oral case we have the deed with its obvious boundaries, and a long possession by the defendant and those under whom he claims, in virtue of the deed. Here is a written title plain and definite in its extent. The defendant tells the jury that this is his muniment upon which he relies ; and the least we can say is, that to allow him to go farther west upon the very equivocal oral evidence in the case, would violate the spirit of the statute of frauds. It would also violate another rule in the doctrine of boundary ; that what is more obvious and certain should overcome that which is less so.

In any view, therefore, I think there should be a new trial, the costs to abide the event.