RICHARD RATCLIFFE, RESPONDENT, *v.* HORATIO N. GRAY, APPELLANT.

*Real Estate—Location of Boundary—Evidence.*

Actual and continued possession of the premises adjoining the located line is not essential to the existence of *practical location.* It does not depend upon a *pedis possessio* of the land adjoining; but its existence may be established by any competent evidence of the fact.

The surveying out, and fixing upon a line between adjoining properties by the parties themselves, is such a practical location as will control courses and distances; especially when, from the description in the deed or from the decay of boundaries, the line would otherwise become uncertain. But such practical location must have been acquiesced in for twenty years.

As evidence of acquiescence, it is competent to inquire of a witness whose relations to all parties have been such, that had there ever been any dispute about the correct location of such line he would most likely have heard of it, "Did you ever hear of there being more than one west line," &c., describing the marked line in controversy.

PARKER, J.—This is an action of trespass upon land arising out of a dispute between the parties in reference to the location of the division line between them. Both parties derive title from James Cary, who conveyed simultaneously, and on or about March 11, 1807, to Samuel Cary, together with other lands, the fifty acre piece, now owned by the Plaintiff, and to Bela Cary the 131 acre piece, now owned by the Defendant. These two pieces adjoin each other, the fifty acre piece lying east of the 131 acre piece, and it is the line between them that is in dispute. The place of beginning described in the deed of the fifty acre piece is a stake and stones standing in a hemlock stump, "east thirty-nine and a half degrees south from the centre of the highway." The description then proceeds, "from thence north 36 degrees 45 minutes east, 64 rods; from thence north 34 degrees east, 133 rods to a stake and stones; from thence at right angles, 32 rods westerly; from thence south 40 degrees west, 189 rods to a stake and stones; from thence at right angles 51 rods 15 perches to the place of beginning, containing fifty acres of land.—N. B. It is hereby understood that the line running northerly from the stake and stones in said hemlock stump, at the distance of 64

rods, shall be 40 rods to the east line of said great lot No. 4 in said Sadaquada patent, at right angles with aforementioned line from said stump."

It will be seen that the north line of the fifty acres is, by the deed, only 32 rods in length, and that running this line from the east westwardly, the deed gives no monument for its termination, the course and distance only being given. The Defendant, therefore, claims that the north-west corner of the fifty acre piece is fixed by the termination of the line 32 rods in length; and consequently that the Plaintiff's west line is a line drawn from that point to the south-west corner, respecting which there is no essential disagreement; while the Plaintiff claims for his west line a line commencing at a point on the north, 3 rods and 11 links farther west than the termination of the thirty-two rods, and running thence to the south-west corner. The triangular strip thus formed is the land in controversy, within the northern half of which is the locus in quo.

The ground of the Plaintiff's claim to go beyond the thirty-two rods is that, upon the line to which he claims, there is a well-defined line of marked trees, which, he insists, was made upon a survey of the lots at the time of the conveyances, and at which the parties to the two conveyances located the respective lots upon that line as the boundary line between them; and that such location has been acquiesced in by them and the subsequent owners, from the time it was made up to the commencement of this suit, being a period of more than fifty years.

The trespass complained of consists of the cutting, by Defendant, of wood and timber upon this disputed territory, the drawing away of wood cut there by the Plaintiff, and the marking of a line upon the trees along where the Defendant claims the true line to be.

The action was tried at the Circuit by the Court and a jury, and the Plaintiff had a verdict upon which judgment was entered; which judgment was affirmed by the General Term.

Upon the trial, the Defendant moved for a nonsuit, on the ground that the Plaintiff had not shown a proper title to the

premises, that he could not claim to hold by a practical location of and acquiescence in the line claimed by him, but should be confined to and controlled by his deed.

The motion was denied, and the Defendant excepted; and this raises the principal question in the case.

The evidence showed, or tended to show, that the land along the northerly half of the disputed line has never been claimed by the Plaintiff. Through the uncleared portion of it is a distinctly marked surveyor's line, shown, by blazing a portion of the marked trees upon the line, to have been made at or about the time when the above-mentioned deeds were given, and that the pieces conveyed to Samuel and Bela Cary, respectively, were surveyed out to them at the time of the conveyance; that the south part of the fifty acres had been cleared before the making of the deeds, and the west line fenced along the clearing, and that this fence was in line with the marked trees, and formed with them a continuous straight line; that it has ever since been mentioned as a line fence by the adjoining proprietors, and that the Plaintiff and those under whom he claims have ever claimed to own up to this line; that the Plaintiff's grantors had, for a number of years after the giving of the deeds, made sugar along and up to the line, and had cut out the timber and underbrush, except the maple trees, along the line for that purpose; and had applied to and obtained the consent of Bela Cary to tap trees on the west side of this line; that Defendant's tenants, when Plaintiff took possession of the fifty acre lot, showed him the line of marked trees as the west line of the lot.

It also appeared that the hemlock stump, described in the deed of the fifty acres as the starting-point, was gone, and the respective surveyors disagreed in their location of it, and that from the description in the deed, wherever the starting-point might be, the premises could not be plotted; the northness and southness failing to balance by 38 links, and the eastness and westness by one chain and four links. By whichever line the fifty acres is bounded, it overruns in quantity, and so with the 131 acre piece.

Were there in these facts the elements of a practical location, and such acquiescence in it as to bind the parties?

It was held in Baldwin *v.* Brown (16 N. Y. R. 359) that practical location and long acquiescence in a boundary line are conclusive, not upon the notion that they are evidence of a parol agreement establishing the line, but because they are of themselves proofs that the location is correct; that the "rule seems to have been adopted as a rule of repose, with a view to the quieting of titles, and rests upon the same reason as the statute prohibiting the disturbance of an adverse possession which has continued for twenty years."

Actual and continued possession of the premises adjoining the located line is not essential to the existence of practical location. It does not depend upon a pedis possessio of the land adjoining, but its existence may be established by any competent evidence of the fact. When adjacent owners unite in surveying their respective lots and in making a line upon ground between them, such survey would doubtless constitute and be evidence of a practical location; and the line thus fixed, after a sufficient length of acquiescence, would, it seems, control the courses and distances in the deeds. But particularly would this be so when the grant is, from its terms, or where it becomes, from destruction of monuments, uncertain and ambiguous as to location (Jackson *v.* Ogden, 4 John. R. 140; S. C. 7 John. R. 238; Jackson *v.* Freer, 17 John. R. 29; Jackson *v.* Smith, 9 John. R. 100; McCormick *v.* Barnum, 10 Wend. 105; Jackson *v.* McConnell, 12 Wend. 421; Adams *v.* Rockwell, 16 Wend. 285; Reed *v.* Farr, 35 N. Y. R. 113; Clark *v.* Wethey, 19 Wend. 320).

In Adams *v.* Rockwell (supra) the Chancellor says: "Where there can be no real doubt as to how the premises should be located, according to certain and known boundaries, described in the deed, to establish a practical location different therefrom, which shall deprive the party claiming under the deed of his legal rights, there must be a location which has been acquiesced in for a sufficient length of time to bar a right of entry, under the Statute of Limitations in relation to real estate." And in Clark *v.*

Wethey (supra), Judge Cowen, after arguing against the location which allows a practical location to control the courses and distances in the deed, says: "I speak not now of those cases in which time has obliterated the monuments or boundaries of the deed, so as to leave its location a matter of uncertainty; I speak not of cases in which the carelessness or fraud of parties, or any other causes, may have rendered it impossible to locate the deed by known monuments or mathematical lines; where this is so, the declarations of the parties, or their acts of acquiescence or forbearance, were always receivable."

Now, in the case at bar, the description in the deed, both from time and from the destruction of the monuments given as the starting-point, renders the precise location of the land intended to be conveyed uncertain. Then the existence of this line of marked trees, which the jury might believe, from the evidence before them, to have been made by the parties to the first two deeds as the division line between the lots, and the acquiescence which, as there was evidence tending to show, had existed in that line as the boundary of the lots respectively for more than fifty years, were sufficient to entitle the Plaintiff to the judgment of the jury upon the question whether such practical location and acquiescence existed; and, consequently, the motion for a nonsuit was properly denied.

The Defendant's counsel requested the Court to charge the jury in the following words: "When there are no monuments given in the deed, but courses and distances only, it must be controlled by the course and distance on that line." The judge refused to charge in that form, and the Defendant excepted. But upon that point the judge did charge in the precise words of the request, with this addition: "This is so if the line is run by the deed alone; but this proposition fails in its application to a case where the land cannot be plotted from the deed." It is impossible, I think, to hold that there was any error. The effect of the unqualified instruction called for by the Defendant would have been to hold the Plaintiff absolutely to the thirty-two rods for the length of his north line, when, as we have seen, the facts in the case might, as the jury should find them, modify the length of

that line with reference to the line of marked trees. This request was in effect similar to the one to nonsuit the Plaintiff, and was properly refused.

The objections to the reception of evidence upon the trial were, I think, all properly overruled.

The witness Kent, who lived with Samuel Cary when the deeds to him and Bela Cary were given by James Cary in 1807, and for some years afterward, after speaking of the running out of the lots to Samuel and Bela, of the fence on the south end of the fifty acres, and on the west side of the south part thereof, and that those fences were occupied as line fences, and kept in repair as such, was asked if he ever heard of more than one line on the west side. This was received under Defendant's objection; and the witness answered: " I never heard of but one line till this last summer." His position being such that if there had been any difference between the adjoining proprietors in respect to this line he would have been likely to know it, the fact that he had heard of none, was *some* evidence, however slight, that none was spoken of or existed, and hence some evidence of acquiescence in that line.

The Plaintiff's surveyor was asked by Plaintiff's counsel, " Have you made a calculation as to how long the north line must be, assuming the east, south, and west lines to be as given in the deeds ? " " Defendant's counsel objected to the question on the ground that it was speculative and immaterial." The objection was overruled, and Defendant excepted; and the witness answered as follows : " Computing the latitudes and departures as given in the deeds, there is an error in it. The land cannot be run by the description in the deed, because, in following the courses and distances given in the deed, you will not come out at the place of beginning; assuming all other lines to be correct, the north line should be thirty-four rods and twenty links in length."

I am inclined to think the answer admissible, as tending to show the uncertainty and ambiguity of the terms of the deed in respect to location, and, in connection with the other evidence

in the case, to assist in accounting for the existence and position of the marked line in question.

The same witness was next asked: "How do the lines of this lot and Cary's hold out; do they overrun or fall short?" This was objected to by Defendant's counsel, and received subject to the objection. The witness went on to state substantially that in measuring the lines given in the two deeds the actual measurement of every line, where monuments were given as well as others, overruns the length given in the deed, and stated with reference to each line how much.

The deeds were given at the same time, and there is evidence in the case to the effect that the lots were surveyed out to the grantees at the same time. The fact that every line, as given in the deeds, was shorter than an actual survey now made shows it to be, tends to show that the measurement then made was with a longer chain or measuring-line than the one used in the recent surveys, and that the thirty-two rods then measured ran beyond the termination of that distance now reached, and hence tended to account for a contemporaneous line of marked trees being found further west than thirty-two rods as now measured from the east line of the fifty acres, and to strengthen the evidence of the fact of a practical location of the lots.

I do not see any error calling for a reversal of the judgment, and am of the opinion that it should be affirmed.

Affirmed.

Not voting, HUNT and GROVER, JJ.