## JACKSON v. PERRINE AND WIFE.

1. Where the language of a deed admits of but one construction, and the location of the premises intended to be conveyed is clearly ascertained by a sufficient description in the deed by courses, distances, or monuments, it cannot be controlled by any different exposition derived from the acts of the parties; but where the language is equivocal, and the location of the premises is made doubtful, either by the insufficiency of the description or the inconsistency of two or more parts of the description, the construction put upon the deed by the parties in locating the premises, may be resorted to, to aid in ascertaining their intention.

2. Where an ambiguity exists in the location of a lot, from inconsistent calls, the acts of the grantor in making the survey and marking a boundary by stakes, which is consistent with one call for a boundary, and not with another, when coupled with evidence of an acceptance by the grantee of such location, by setting his fences by the stakes, are competent evidence of a practical location by mutual consent, which, when once made, will be conclusive upon both parties, especially when, by such location, the grantee obtains his full complement of land, and the courses and distances set out in the deed are fully answered, and the rights of a subsequent purchaser from the same grantor of an adjoining lot have intervened.

3. A monument in the line gives greater certainty in the location of that line than can be obtained by measurements from an external monument to a beginning corner; and where the premises cannot be located in conformity with both, the latter must yield to the former.

4. Where a public street becomes such by dedication, followed by an acceptance by user, the location of the street, as delineated by the stakes which were set in the act of dedication, according to which the street was opened and used, determines the lines of the dedication, and they cannot be altered by evidence of intention deduced from measurements in which the public had no interest.

Henry Bennet, being the owner of a parcel of land, containing about ten acres, in the county of Monmouth, on the northerly side of the road to Middletown Point, adjoining, on the northeasterly side, lands of Daniel Conover, in 1858 laid it out into twenty-four town lots, and opened through it three streets, one of which was called Henry street. This latter street was parallel, or nearly so, with his line with Conover. With two exceptions, the lots were laid out an uniform width of fifty feet front and rear, and Henry street was laid out forty-two feet in width. Fronting on the Middletown road, between Henry street and the Conover line, were three lots, designated on the map as Nos. 10, 11, and 12, each fifty feet front and rear, and two hundred feet deep. The map was made by one Simon F. Pyle, a surveyor employed by Bennet, and is referred to in the deeds of conveyance made by Bennet for the several lots sold. In the line between Bennet and Conover, in the edge of the Middletown road, was a locust tree, which was a monument called for in the title deeds of the owners of the two tracts. This tree, as appears from the testimony, was about two feet in diameter, and stood just within the fence, between the Conover and Bennet lots, on the Conover side. It was cut down in 1850 by Conover, shortly before the survey made by Pyle, from which the Bennet map was made. Lots Nos. 10, 11, and 12 were sold by Bennet to Cowart, Hanlin, and Frey—Cowart having become the purchaser of lot No. 10, by deed dated September 10th, 1852; Hanlin, of lot No. 11, by deed dated April 5th, 1854; and Frey, of No. 12, by deed dated June 10th, 1852. The plaintiff claims under Cowart, and the defendants under Hanlin. The deed to Frey is first in point of time, and that to Hanlin is the last. The description of the premises in the

Frey deed is as follows: Beginning at the locust stump in the edge of the road, it being the corner between said Bennet's and Daniel Conover's land; thence, along the edge of the road (1) south thirty-seven degrees west, fifty feet, strict measure; (2) north fifty-four degrees west, two hundred feet, strict measure; (3) along the rear of said lot north thirty-seven degrees east, fifty feet, strict measure, to said Conover's line; (4) along said Conover's line south fifty-four degrees east, two hundred feet, strict measure, to the beginning. The description in the Cowart deed is: All that certain lot designated as No. 10 on the map made by Simon F. Pyle; beginning at the west edge of the road leading from Freehold to Middletown Point *distant one hundred feet,* on a course south thirty-seven degrees west, *from a locust stump,* which is the beginning corner of Daniel Conover's land, and thence, (1) north fifty-four degrees west, two hundred feet; (2) south thirty-seven degrees west, fifty feet, to the edge of the new street; (3) along the edge of the said new street south fifty-four degrees east, two hundred feet to the west edge of the said Middletown Point road; (4) along the edge of said road north thirty-seven degrees east, fifty feet, to the place of beginning, together with the privilege of using the new street on the southerly side of said lot as was laid out, &c. The description in the deed to Hanlin is: All that certain lot of land situate, &c., and between Enoch L. Cowart's lot and Anthony Frey's lot, designated as lot No. 11 on map of lots laid off by Henry Bennet, beginning at a stake in the westerly edge of the main road and easterly corner of said Cowart's lot, and running thence along the line of said Cowart's lot (1) north fifty-three degrees west, two hundred feet, strict measure; (2) north thirty-six degrees forty five minutes east, fifty feet, strict measure, to the rear corner of Anthony Frey's lot; (3) along the line of said Frey's lot south fifty three degrees east, two hundred feet to the edge of the said road; (4) along the edge of the said road south thirty-seven degrees west, fifty feet, strict measure, to the place of beginning.

The controversy relates to a strip of land twenty and a

Jackson v. Perrine et ux.

half inches in front on the Middletown road, and six inches in the rear, which is included within the defendant's enclosure. At the trial before the Monmouth circuit a verdict was had in favor of the plaintiff for the entire strip, and a rule to show cause why that verdict should not be set aside was granted.

Argued at February Term, 1871, before the CHIEF JUSTICE, and Justices BEDLE and DEPUE.

For the plaintiff, *W. H. Vredenburgh.*

For the defendants, *Joel Parker.*

DEPUE, J.   The dispute arises out of a controversy in relation to the true location of the plaintiff's lot.   The beginning corner of this lot, as designated in the deed from Bennet to Cowart, under whom the plaintiff claims, is distant one hundred feet from a locust stump, which is the corner of Conover's land, with the original Bennet tract.   This stump was in existence when the cause was tried, and is described as being then from fifteen to seventeen inches over.   Its identity and location were clearly established at the trial.

The stump in 1850, when Pyle made the survey and map, was in the edge of, and on the Conover side of, an ancient fence between the Conover and Bennet lands.   This fence was then recognized by Bennet as the true line between him and Conover, which had become established by long possession. In its present condition the side of the stump is four inches, and its centre twelve inches from the line of that fence.   Measuring a distance of one hundred feet from the centre of the stump, the beginning corner of the plaintiff's lot will be twenty and a half inches within the defendants' enclosure, and the title to the premises in dispute is in the plaintiff. This is the whole case on the part of the plaintiff, and upon this exhibition of title, if it can be supported, the plaintiff will be entitled to his verdict.

The defendants insist, in the first place, that by a practical

location by other monuments called for in the plaintiff's deed, the true location of the plaintiff's northeasterly line is fixed at the location of the fence now between these lots, which would entitle them to a verdict for the whole strip in dispute; or that if the line so fixed can be disturbed by measurements from monuments called for in the deed, the measurement to ascertain the beginning corner of the plaintiff's lot is to be made from the side, and not from the centre of the stump, which will give the defendants twelve inches more of the premises than was accorded to them by the verdict of the jury.

In the plotting of 1850, the three lots were laid off each fifty feet wide by actual measurement, and stakes were set to mark the boundaries of each. The lots were at that time enclosed by a fence along the Middletown road, but not separated by cross-fences. In the fall of 1822 Cowart moved an old house on his lot, and in March, 1853, built a barn upon the rear, and put up a fence between his lot and the lot now in the possession of the defendants. At the time this fence was placed, there were stakes in the ground, and a notch on the front fence showing the division line between the two lots. Mr. Paterson, who built the fence and the barn, testifies that the fence was set by the stakes, and that the side of the barn was placed in the line of the fence, with the eaves projecting over. This fence and barn were standing when Hanlin, under whom the defendants claim, acquired title.

The defendants also gave in evidence proof, by the testimony of Pyle and Bennet, that the measurements by which the plotting and map of 1850 were made, were in fact made from the southerly side of the stump, and not from its centre. Pyle says that this was done by Bennet's direction, for the reason that Conover could hold to the line of the old fence, which stood on the side of the stump, by possession. A new fence, erected in 1868, stands on the site of the old fence, and is claimed as the boundary by the owners of the Conover lot. Starting from a point in the line of this fence, the one hundred feet designated in the plaintiff's deed as the distance

from the stump to the beginning corner of his lot, would run out within eight inches of the fence between the lots of the parties, and twelve and a half inches beyond the line as determined by the verdict. This surplus of eight inches is now within the enclosures of Frey and of the defendants—three inches of it being within the enclosures of Frey, and five inches in those of the defendants.

The discussion before the court was directed to the competency and legal effect of the evidence offered by the defendants, the purport of which has been stated.

Testimony of the situation and location of fences, and their recognition by the acts of the parties, as the boundaries of their lands, is always competent evidence in cases of disputed boundaries. The competency of such evidence does not depend upon the maintenance of the fences for the period of twenty years, which would be sufficient to give title. Its admissibility is based upon the principle that the placing of fences, and possession in accordance therewith, is an admission by the owner against his interest, of the limits of the ownership. In cases involving a dispute as to boundaries, the contention is not as to the competency of evidence of this kind, but as to its effect in the location of the premises, by the description of them contained in the deed.

The law is well settled, that where the language of a deed admits of but one construction, and the location of the premises intended to be conveyed is clearly ascertained by a sufficient description in the deed, by courses, distances, or monuments, it cannot be controlled by any different exposition derived from the acts of the parties in locating the premises. But it is equally well settled, that when the language is equivocal, and the location of the premises is made doubtful, either by the insufficiency of the description, or the inconsistency of two or more parts of the description, the construction put upon the deed by the parties in locating the premises, may be resorted to, to aid in ascertaining the intention of the parties. *Den* v. *Van Houten,* 2 *Zab.* 61 ; *Opdyke* v. *Stephens,*

4 *Dutcher* 84; 4 *Greenl. Cruise* 246, and note 1; *Livingston* v. *Ten Broeck*, 16 *J. R.* 14; *Clark* v. *Withey*, 19 *Wend.* 320.

A practical location, consistent with a part of the description, and inconsistent with other parts, is evidence that there is a mistake in the latter, and that they are to be rejected as false. In all cases where the language of a deed is of doubtful construction as to the boundaries, the construction given to it by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary is clearly shown. *Stone* v. *Clark* 1 *Metcalf* 378. The doctrine in this state has been carried still farther, and it has been held that, although no doubt would arise as to the true location of a lot from the construction of the grant, yet if the grantee, by his acts in locating his lot, has fixed his lines differently, and induced others to act upon such erroneous location, in purchasing or making improvements, he will be bound by such location, and will, by his acquiescence, be concluded from disputing the boundaries thus fixed, although such acquiescence was for a less period than twenty years. *Den* v. *Van Houten*, 2 *Zab.* 62.

The competency of the evidence touching the manner in which the measurements were in fact made from the monument from which the beginning corner of the plaintiff's lot was ascertained, and that relating to the setting of stakes at the time of the survey by Pyle, require a different consideration. Cowart was not present at the measurement, and the stakes are not mentioned as actual or contemplated monuments in the description in the deed. *Prima facie*, this evidence is incompetent.

But, as will be seen presently, a lot of the dimensions of that conveyed to Cowart cannot be located by Henry street and a beginning corner ascertained by a measurement from the stump. There is, therefore, a latent ambiguity as to the location intended. In cases where there is a latent ambiguity as to which of two persons, or things—each answering the description—is intended, evidence *aliunde* may be resorted to to remove such ambiguity. Where, in the description in a

devise, there are two corners answering exactly to the description in the will, so that no construction upon the instrument will show which of the two was intended, paról evidence is admissible to effect that purpose, and the declarations of the testator to the scrivener, when the will was drawn, which corner he intended, are competent. *Den* v. *Cubberly*, 7 *Halst.* 309. In *Paddock* v. *Wadley*, 1 *Crompton & Jervis* 90, the agreement to surrender described the premises as "all those brick works, copy-hold of inheritance, then in the possession of A;" and testimony of declarations made by the surrender when the agreement was entered into, defining the lands to be surrendered, was held to be competent. In *Mann* v. *Durham*, 5 *Gray* 511, a call in proceedings in partition was for a boundary on a street, and it appearing that there was a latent ambiguity in the description, evidence was received to show that the street was not opened, but only marked out on paper; and that the surveyor, in making his survey for the plan annexed to the proceedings, made his measurements from a certain point in the street. So, also, where lands are described as bounded on a natural pond, the waters of which were raised more or less, at different times, by means of a dam, existing at the time of the conveyance, it was held competent to prove, by parol, that a certain line was agreed on at the time of the conveyance, as the boundary of the pond. *Waterman* v. *Johnson*, 13 *Pick.* 261.

Where an ambiguity exists in the location of a lot from inconsistent calls, the acts of the grantor in making a survey and marking a boundary by stakes, which is consistent with one call for a boundary, and not with another, when coupled with evidence of an acceptance by the grantee of such location by setting his fences by the stakes, are competent evidence of a practical location of the premises by mutual consent, which, when once made, will be conclusive upon both parties, especially when, by such location, the grantee obtains his full complement of land, and the courses and distances set out in the deed are fully answered, and the rights of a subsequent

purchaser of the same grantor, of an adjoining lot, have inter-vened.

In the plotting of 1850, Henry street was laid out forty-two feet wide. Its width was determined then by actual measurement, and is marked on the map made by Pyle, which, by express reference in the deeds of the several parties, became part of the description. *Davis* v. *Rainsford*, 17 *Mass.* 207. The measurements made by Segoine, a surveyor called by the plaintiff, show that Henry street is now forty-two feet and six inches wide, outside of the plaintiff's fence, at the front of his lot, and forty-two feet seven inches at the rear. Forman and Pyle, witnesses for the defendants, make the width of Henry street forty-three feet.

The location of Henry street was delineated on the ground by the stakes that were set to mark the corners of the several lots laid off on both sides of the street. Pyle and Bennet testify that they intended to lay Henry street out one hundred and fifty feet from the line of the fence between Bennet and Conover, and made their measurements accordingly. If they were accurate in their measurement of the Cowart lot, the street was fifty feet from the stake set to mark the division line between the Cowart and Hanlin lots. The street was opened shortly after Cowart became the owner of his lot. Pyle testifies that he thinks the southerly line of the street, as now opened, is where he located it in 1850, and that his impression is that the plaintiff's fence has been set away from the street in front. No evidence was offered by the plaintiff to controvert this statement or to account for the increased width of the street. This evidence is too uncertain to be entitled to much weight affirmatively. That it was not nega-tived by counter proof, is merely mentioned to show that it was not pretended that the street, after 1850, had become shifted over on the plaintiff's lot. In dealing with this ver-dict it is not necessary to give this testimony any other effect.

But Cowart built a fence along the Henry street side of his lot soon after he purchased. It is to be inferred from the case that he did this as early as the fall of 1852, or the spring

of 1853, and that the fence now along the street is in the same location. It must be assumed as against Cowart and his representatives, that this fence was, in point of fact, placed on the line of the street, as actually marked by stakes. To state the law as favorably to the plaintiff as may be, the location, by Cowart, of his boundary on the street, by setting his fence, must be held to be its true location in the line of the street until clear proof is made to the contrary. The distance from the middle of the post in this fence at the corner of Henry street, to the centre of the stump, is one hundred and fifty-one feet and five inches, and to the line of the Conover fence, one hundred and fifty feet and five inches.

It was argued that Henry street was intended to be laid out one hundred and fifty feet from the Conover line, and that the street is incorrectly located on the ground. But Henry street did not become a public street by a formal grant, or by the action of surveyors in laying it out, in which cases courses, distances, and measurements would legally fix the location. Its character as a street arose from the act of dedication in 1850, followed by an acceptance by user. The location of the street as delineated by stakes, according to which the street was opened and used, determines the lines of the dedication. The public in general, and other proprietors, who have purchased lands bounded on the street, are interested in its location as well as the plaintiff; and the location of the street, as it was marked on the ground and opened, cannot be changed without affecting their interests. The identity of the gift, as executed and ear-marked in the dedication, must prevail. It cannot be altered by evidence of intention, deduced from measurements in which the public have no interest.

The deed to Cowart, besides calling for the street as an ending corner of one of the courses, and as the boundary of one side, contained a grant of the privilege of using the new street *as was laid out*. By placing a fence along the street, and a corresponding fence on the other side of his lot, and enclosing it, he adopted and accepted that as the true line of the street. The width of the intended dedication lies outside

of this line. No public or private right has intervened, or can intervene to prevent the plaintiff maintaining his fence along the street as it was set by Cowart. Any uncertainty in the line of the street, as marked and dedicated, or difficulty in tracing it, that otherwise might exist, is thus removed. As against Cowart and those who succeeded to his title, the line of the street is determined by his own act.

The street is called for as the southwesterly line of the plaintiff's lot. It became, by force of the description, a boundary in that line. A monument in a line gives greater certainty in the location of the line than can be obtained by measurements from an external monument to a beginning corner. An element of uncertainty, arising from liability to mistake in making measurements, exists with respect to the latter, which does not enter into the former. The plaintiff's lot cannot be located in conformity with the dimensions mentioned in his deed by the line of Henry street, and by a measurement from the stump in the Conover line. One call or the other must give way. Upon general principles, that must yield in which the element of uncertainty, arising from measurements, exists.

Besides that, the parties under whom the plaintiff claims have, by a practical location, selected the street as the true monument, and rejected the other as false. The deed to Hanlin does not call for a measurement from the stump; its beginning is at the easterly corner of Cowart's lot, which was then designated by the fence. He acquired title after Cowart had elected to locate his lot by the street, instead of locating it by a measurement from the stump. That election cannot now be withdrawn to the prejudice of the rights of those who have succeeded to his title.

The distance from the middle of the post in the fence, at the junction of Henry street with the Middletown road, to the middle line of the fence now between the lots of the parties, is forty-nine feet and eight and one-half inches. Allowing for a measurement to the outside instead of the middle of the post on the street—which Forman makes forty-nine feet and

ten inches—the plaintiff has, between that line and the fence between his lot and the defendant, very nearly the full complement of land called for in his deed. The jury has given him from eighteen to twenty inches more.

The case is not distinguishable from *Den* v. *Van Houten*, 2 *Zab.* 61, in which a verdict for the plaintiff, under similar circumstances, was condemned by the court.

The measurements used in the preparation of this opinion, have been taken chiefly from the testimony of the plaintiff's witnesses. They relate exclusively to the front of the lots along the Middletown road. The measurements along the rear have not been given. With respect to them, the testimony is quite conflicting. It is not necessary to discuss that subject at this time. Neither have we considered the question whether the plaintiff is estopped from disputing that the fence between his lot and the defendants is upon the true location of the line. The question was not raised at the Circuit.

The evidence which was admitted as to the mode of making the measurements in the survey of 1850, and of the setting of stakes to indicate the lines of the lots, in connection with the building of the fence by Cowart, in conformity with the stakes, was competent evidence in the cause. The line so adopted remained apparently undisputed for upwards of sixteen years, until this controversy arose. If it has not become unalterably fixed by estoppel, it ought not now to be disturbed, except upon the most cogent proof that it is erroneous.

Enough has been said to show that, as the case now stands, the plaintiff's lot must be located by Henry street, and that the line of the street, if not otherwise ascertainable with certainty, has been determined by the act of the parties under whom the plaintiff claims, and that the verdict is wrong.

The rule to show cause is made absolute, and a *venire de novo* awarded. Costs to abide the event.

The CHIEF JUSTICE and Justice BEDLE concurred.

CITED *in Boon* v. *Pierpont,* 1 *Stew.* 11.