FRENCH v. WRAY.

(Supreme Court, Appellate Division, Third Department.  December 30, 1912.)

BOUNDARIES (§ 48*)—ESTABLISHMENT—ACQUIESCENCE—FENCES.

Where a fence constructed between adjoining owners claimed by defendant as the boundary was erected between 1883 and 1885, and defendant had since cultivated a garden up to the fence without substantial interruption, and had also, to the knowledge of plaintiff's predecessors, built valuable buildings in reliance on the line, which buildings and improvements represented a substantial part of the premises in dispute, the fence having barred plaintiff and his predecessors from the premises and effectually inclosed the same as far as they were concerned, and they having acquiesced therein for more than 20 years and the original marks having been obliterated, plaintiff was estopped to deny that the fence established the true line.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 232–242; Dec. Dig. § 48.*]

Appeal from Trial Term, Warren County.

Action by Harma D. French, as committee, etc., against Emma Mann Wray.  From a judgment for plaintiff from an order denying defendant's motion to set aside the verdict and for a new trial, defendant appeals.  Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Charles R. Patterson, of Glens Falls, for appellant.
Lyman Jenkins, of Glens Falls, for respondent.

JOHN M. KELLOGG, J.  The calls of the patents cannot with great confidence be placed upon the ground.  The starting point was a rock marked "W. F.," situated upon a rocky point.  The marks cannot be found, and it is difficult to tell from what particular rock the survey started.  The controversy arises from the plaintiff's locating the starting point in the survey some 200 or 250 feet south of the point where the defendant starts.  The defendant has the advantage in the line which she claims of finding blazed and marked trees; the blazes and marks apparently having been made about the time the original survey was made.  The plaintiff takes a starting point which will coincide with a line of marked trees, but it is conceded that the marks are of quite recent origin.  It seems pretty well established that the elder Barnett, who occupied the premises on the lake immediately north of the patents in question, maintained a fence on his southerly line, and that his premises had been cleared up to the line; that about 29 years ago he had a survey made and removed the fence 200 or 250 feet to the south and marked trees along the new line, and immediately he and his sons cut the valuable timber from the land which had thus been acquired, and apparently the new fence built by them is what is now called the old fence near the line which the plaintiff claims as the proper line.  The finding of the old marked trees along the lines as claimed by the defendant is convincing evidence in her favor.  The marks upon the trees and the monuments found by the plaintiff are not convincing, as they were made long after the orig-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

inal patent, and the circumstances under which they were made are not shown. Some of them were evidently made by the Barnetts when they attempted to change the line. Some may have been made by others relying upon that survey. Clifton bought the premises now owned by defendant in 1882, and soon after he built a fence extending from the lake to the highway along the line which the defendant's survey indicates to be the original line of the patent, and that line passes through a large oak tree at the lake, and one of the patents shows that the true line passed through such a tree near the lake. This fence completely separated the defendant's premises from the plaintiff's lands. The premises were inclosed by this fence, the road, and the lake. They have been cultivated and improved since the fence was erected about 1883 to 1885, and a garden, without substantial interruption, has been maintained near the fence, and the defendant, with the knowledge of the plaintiff's predecessors, has built valuable buildings in reliance upon that line. We may infer that the buildings and improvements represent a substantial part of the value of the premises in dispute. This fence barred the plaintiff and his predecessors in title from the premises, and effectually inclosed the premises as far as they were concerned. It is improbable that the acts of the defendant, so open and hostile, would have been acquiesced in for over 20 years if the line represented by the fence had not been mutually agreed upon or at least understood by all the parties interested to be the correct line, and the evidence indicates that it was mutually agreed between the adjoining occupants that this fence was the line. The descriptions in the two patents do not accord. The monument representing the starting point is obliterated. So long a time has elapsed since the original survey was made that it is difficult to locate the exact lines. Under such circumstances, the continued occupancy by the defendant and her grantor up to this fence, and the improvements, and the recognition of it as the true line, is very convincing evidence in favor of the defendant. If in 1882 the plaintiff's predecessors had raised the question that the defendant's grantors were trespassing upon their premises, the true line at that earlier day probably could have been more correctly determined, and, if they had succeeded, the defendant's grantors would have lost nothing except they were unable to take land which did not belong to them. Since that time the situation has materially changed. On account of the changes by time, it is now more difficult to prove the exact line, and a recovery now would bring to the defendant great damage in the loss of her buildings and improvements. The plaintiff should not be thus benefited by the delay to assert her rights, if she had any. It is not reasonable to assume, where the acts were so open and hostile, that a mere trespass would have been suffered to ripen into a substantial right. It is not necessary to say that the plaintiff is estopped. It is sufficient to say that the acts of the plaintiff and his predecessors, and the acts of the defendant, under all the circumstances, leave the fence as the best evidence of the dividing line.

The findings of fact that the plaintiff is the owner and entitled to the possession of the premises in dispute and that the defendant is wrongfully in possession are disapproved of as against the evidence. The court properly excluded the testimony of the witnesses Clifton.

The judgment should therefore be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event. All concur; LYON, J., in result.