FRANCES COSTA and Others, Appellants, *v.* JOHN BENGER and Another, Respondents.

Third Department, June 21, 1929.

*Albert Haskell, Jr.,* for the appellants.

*Thomas F. Rogers* [*Charles H. Gardner* of counsel], for the respondents.

HILL, J. The location of the boundary line between the city lots of the parties is the subject of this litigation. The lots are located and front on the west side of South Main street, in Cortland. Roswell Randall was the common owner prior to 1863. He conveyed the northerly lot to Nottingham, plaintiffs' predecessor in title, in 1863, the southerly lot to Hawley, defendants' predecessor in 1865. The latter lot had forty feet more depth than the former. The Hawley deed gives the following description of the northerly boundary of the lot conveyed: " Beginning in the fence on the west side of Main Street in Cortland village at the southeast corner of George Nottingham's land, thence westerly on the said Nottingham's south line and the south line of lands owned by Mrs. Knox to the fence, being the northwest corner of the lot hereby meant to be conveyed." The Nottingham deed describes the land as being lot No. 3 as shown on the Loring map now on file in the Cortland county clerk's office. Its frontage is there given as seventy-three and ninety-two one-hundredths feet. In the conveyance to Hawley no mention is made of the Loring map, but the lot next south of lot 3 is shown on the map as having a frontage of eighty-eight and forty-four one-hundredths feet. The southeast corner of defendants' lot is definitely located.

The learned trial court has located the northern boundary at a point which gives defendants a frontage of ninety and sixty-seven one-hundredths feet and plaintiffs seventy-two and forty-two one-hundredths feet. This gives defendants' lot a width of two and ten one-hundredths feet more for the distance it joins plaintiffs' land than for the remainder of its depth, their northerly line being

broken by a jog of two and ten one-hundredths feet to the south when it reaches the Knox land mentioned in the Randall deed to Hawley. In this deed the line is straight, because where corners are marked by monuments like fence corners, the connecting lines are always presumed to be straight, unless described to be otherwise. (*Allen* v. *Kingsbury*, 16 Pick. [Mass.] 235.) During the trial the court, with parties and counsel, visited the premises, and defendants located four well-rotted posts several inches below the surface of the ground, which they claimed to be part of the fence that existed in 1863. This, together with the fact that some of the lots north of plaintiffs' premises have a greater frontage than is indicated upon the Loring map, is given by the learned trial justice as his reason for establishing a boundary entirely out of keeping with the record title. The finding of the posts as disclosed in the record is not particularly impressive.

The line in question has been the subject of dispute and controversy since defendants purchased the premises in 1911, but none of their acts has indicated that they claimed land north of the concrete drive five and eighty one-hundredths feet wide which they laid directly north of their building soon after buying the premises. Had they then claimed to own more land, they would have occupied it to widen their very narrow drive. At about the time they located the drive, they split and removed their half of a tree which stood between the sidewalk and the curb partly on their land and partly on the land now owned by the plaintiffs to permit an entrance to the concrete drive. Some time later, they asked the then owner of plaintiffs' premises to permit them to remove the remainder of the tree not upon their premises. The boundary line established by the trial court would place this tree entirely on defendants' land. They paid five dollars about 1915 to the occupant of plaintiffs' premises. They say this was because of her kindness in allowing her half of the tree to be removed — she says it was to pay for an occasional driving on her land just north of the concrete drive. According to their version of this payment, the center of the tree was then recognized by them as their north boundary. Measured to that point, their frontage was eighty-nine and eighty-five one-hundredths feet. The concrete extends four-fifths of an inch farther to the north. These establish a boundary claimed by defendants a foot north of that given in the Randall deed to Hawley, but since about 1911 defendants have occupied the land in accordance with their claim. This occupation has been concurred in by plaintiffs and their predecessors in title to an extent that amounts to a practical location. Certainly the defendants are estopped by their acts from claiming

a line farther north. (*Hinkley* v. *Crouse*, 125 N. Y. 730; *Vosburgh* v. *Teator*, 32 id. 561; *Baldwin* v. *Brown*, 16 id. 359; *Lane* v. *Jacobs*, 166 App. Div. 182; *Whan* v. *Steingotter*, 54 id. 83.)

The judgment should be reversed on the law and facts and judgment rendered in favor of the plaintiffs establishing the line in dispute as indicated in this opinion.

VAN KIRK, P. J., HINMAN, WHITMYER and HASBROUCK, JJ., concur.

Judgment reversed on the law and facts, with costs, and judgment directed in favor of the plaintiffs, with costs, that the line between plaintiffs and defendants be established as commencing on the west side of South Main street at a point in the westerly edge of the sidewalk eighty-nine and eighty-five one-hundredths feet north from defendants' southeast corner and five and seventy-three one-hundredths feet north of the northeast corner of defendants' building as it now stands, running thence westerly through the northwest corner of the concrete sidewalk or driveway as it existed on the northerly side of defendants' building at the commencement of this action, to the intersection of such line with plaintiffs' westerly boundary.

The court reverses the findings of fact in the decision numbered 9, 10, 11, 12, 13 and 22, and finding 19, except the last clause, and makes the following new finding: That the boundary line between plaintiffs and defendants has been in dispute, but since 1911 defendants have occupied substantially to the north edge of the concrete drive, which occupation has been concurred in by plaintiffs and their predecessors in title so that practical location has been established.