MABEL B. McMAHON, Plaintiff, v. FRANK MORSE and Another, Defendants.

Supreme Court, Madison County, November 22, 1929

*Coley & Kiley*, for the plaintiff.

*W. E. Lounsbury*, for the defendants.

SENN, J. The plaintiff and defendants own adjoining dwelling house lots on the south side of Stone street in the city of Oneida. The parcel in dispute is between plaintiff's lot line as conceded by defendants and that of defendants as conceded by plaintiff and is in the form of an acute angled triangle having a street frontage of three feet on the north and tapers to a point about one hundred and forty-five feet to the south, where the plaintiff's and defendants' south lines come together.

In plaintiff's title deed the description is as follows:

" Commencing on the southerly line of Stone Street at the north-westerly corner of lands owned in 1875 by Mrs. William Wilcox; running thence westerly along the southerly line of Stone Street sixty (60) feet to lands formerly owned by Delilah March; thence southerly along said March's east line, one hundred forty-five feet; thence easterly on a line parallel with south line of Stone Street, sixty (60) feet to the westerly line of said lands formerly owned by said Wilcox; thence northerly along said Wilcox's west line one hundred forty-five (145) feet to the place of beginning."

This deed on its face conveys a lot sixty feet front and rear and one hundred and forty-five feet deep. It is, however, not square in form, but in the form of a rhombus, on account of not being at right angles to Stone street.

In defendants' deed their lot is bounded north by Stone street; west by lands of William W. Warr (now of plaintiff); south by lands of Henry Graley; east by a line drawn parallel to the west line and sixty feet easterly therefrom.

This lot is practically square because it is substantially at right angles with Stone street, which runs east and west with only slight deviation to a point at defendants' northwest corner, including the three feet frontage in dispute, and then makes a bend to the south and runs in a direction south seventy-three degrees twenty-five minutes west.

Plaintiff's claim to the land in dispute rests on these facts: That her lot was once a part of lot No. 6 of the Oneida Purchase of 1829 and defendants' lot was formerly a part of lot No. 7 of that purchase; that the line between lots No. 6 and No. 7, after passing through the conceded southeasterly corner of plaintiff's lot, runs in a straight line northerly to Stone street and beyond, and just easterly of the wedge-shaped piece in dispute; that plaintiff's predecessors in title owned and conveyed land lying in lot No. 6, and all of defendants' predecessors owned and conveyed land in lot No. 7 and no other; also the testimony of J. M. Hutton, civil engineer and city engineer of the city of Oneida, to the effect that he had surveyed the line in the light of the Oneida Purchase of 1829

and records to which he had access and found it to be as claimed by the plaintiff.

These facts, standing alone, would no doubt be sufficient to establish the plaintiff's claim of a record title to the land in dispute.

Plaintiff introduced in evidence a record of the Oneida city clerk's office where that part of Stone street is described as follows: " Begin in the west line of lot No. 7, Oneida Purchase of 1829, and at the northwest corner of Mrs. Wilcox's lot, a bend in the south line of the street and runs thence   *   *   *."

This record is not entirely immaterial, but is not binding on the defendants as neither he nor his predecessors were parties to it.

The defendants, among other things, claim title by adverse possession and by practical location.

There is no proof in the case that any of plaintiff's predecessors in title ever made any claim to or occupied this parcel, but there is abundant and convicing proof that they acquiesced and concurred in its occupation by the defendants and their predecessors.

Defendants' lot was a part of an acre tract once owned by Ann Wilcox who acquired it in the year 1862.   She sold it off in parcels. In 1894 she sold the defendants' lot, being sixty feet taken from the west end of her former acre tract, to Elizabeth Hamill and another, who in 1907 conveyed to Jennie Harris, who in 1916 conveyed to the defendants.   Until a few years before her death about thirty years ago Ann Wilcox lived in the house now owned by the defendants.

It appears from the testimony of William Harris and Jennie Harris, apparently very reputable witnesses, who occupied the premises as tenants for about five years prior to 1907 and with Mrs. Harris as owner from then until 1916, that during the time they lived there, there was a fence of wires and posts between the lot now owned by the plaintiff and that owned by the defendants and on the line as now claimed by the defendants.   How much longer the fence had been in existence does not definitely appear but it was there when Harris first moved there.   From the testimony of Edward Snyder and Walter Wilcox it was probably there during Mrs. Wilcox's occupancy.   This fence ran on a line west of two trees which were near the front of the lots.   One was a maple tree nearest the front which did not come up to the fence.   The other, a little further to the south, was a large elm to the west side of which the strands of the wire fence were attached.   The testimony of Mr. and Mrs. Harris is more or less corroborated by that of several other witnesses and taken with the other testimony in the case proves that for well upwards of twenty years this fence was maintained without opposition and with the active co-opera-

tion of Robert Proctor, who for many years was an occupant of the plaintiff's premises. It also appears that at some time during his occupancy Mr. Proctor built a curbing in front of the premises occupied by him which curved around to the south at the point where the line is by the defendants claimed to be and this pointed directly toward the fence line described. A portion of this curbing, that which points south toward the alleged fence line, still remains, the curved part having been removed when the street was paved about 1926. The deed from Wilcox to Hamil, like all the deeds down to that of defendants, purports to convey a strip of land sixty feet wide, so that in that sense the occupancy has been under a record title.

In addition, a survey and map made by Allen Williams, civil engineer, in which he locates a maple tree given as a starting point in some of the old deeds, establish the defendants' line as claimed by them.

If the plaintiff prevails in this action she will have a street frontage of sixty-three feet where her deed only gives her sixty, and the defendants will have only fifty-seven feet where their deed called for sixty.

During the trial some proof was given of declarations of Proctor as to the location of the fence and the boundary line. This was duly objected to and motion made to strike out on the ground that Proctor never had title to the premises. Decision was reserved. On consideration, the motion to strike out is granted and all such declarations are disregarded.

I do not, however, disregard the fact that as a long term occupant he actively participated in the maintenance of the fence on the line which it is now sought to ignore, which acts, under all the circumstances, including the circumstance of the building and maintenance of the curb mentioned above, it is fair to presume were with the permission, if only passive, of the owners.

The long-continued acquiescence of the plaintiff's predecessors in title to the maintenance of the fence on the now disputed line, amounts in law to a practical location of the fence and estops the plaintiff from now disputing defendants' title to the land so fenced off to them. (*Lane* v. *Jacobs*, 166 App. Div. 182; *Costa* v. *Benger*, 226 id. 423.)

Aside from the question of practical location, I believe the land in dispute has been held adversely by the defendants and their predecessors, under a claim of title, based on their respective deeds, for more than twenty years and that the fence mentioned constituted a substantial inclosure.

" Where premises have been bounded by a fence for upwards

of twenty years  *  *  *  the law presumes that the fence is the true boundary and will not disturb this line even where it does not correspond with the line of the premises as shown upon the map according to which they were conveyed." (*Granada* v. *D'Allesandro*, 96 Misc. 468.)

If the lines which mark the Oneida Purchase of 1829 are to prevail over those of the lots which have been laid out and recognized for more than half a century, it is doubtful whether any property lines in the city of Oneida are secure. The lots of the old purchase were of about 100 acres each and their value was chiefly for agricultural purposes.

However that may be, I am making this decision on the assumption that the old surveys were correct. I feel that they cannot prevail over the lines as practically located by the parties interested.

The complaint must be dismissed. Costs are allowed the defendants with the proviso that the excess pavement tax paid by the plaintiff be remitted to her, with interest from the time when paid, or it may be deducted from the costs.

Submit findings accordingly.