Samuel W. Eager. J,
This action is brought to bar the defendants and all persons claiming under them from all claims to an estate, right or title in and to railroad right of way property of the plaintiffs, and to enjoin defendants and their grantees, assigns from entering and trespassing upon the said property. There are two alleged causes of action, the first being in favor of the Erie Railroad Company, in which it asserts title to a portion of its Piermont Branch right of way, to wit, to a strip of land in Spring Valley, extending from the vicinity of Main Street a distance of 562 feet westerly toward Commerce Street and bounded partly on the north by a lot of land fronting on Main Street and owned by the defendants. The second cause of action is alleged in favor of plaintiff Horace Barita as successor trustee of New Jersey and New York Railroad Company, and therein, as such trustee, he asserts title *808 to an irregular piece of land as part of right of way premises of the latter railroad, which piece of land adjoins the Erie strip described in the first cause, joining said strip on its north side at the west end thereof and extending westerly to Commerce Street.
The plaintiff Erie has an unbroken chain of title to the parcel claimed by it and described in the first cause of action, starting with a deed of October 4, 1839, from Peter R. Van Houten to the New York and Erie Railroad Company; and the plaintiff Banta, as trustee, has an unbroken chain of title to the parcel described in the second cause of action, running back to a deed of June 22, 1871 from Andrew Smith and Stephen H. Burr and wives to The Hackensack and New York Extension Railroad Company. The deed descriptions on the face thereof are adequate and complete, and reference may be had to the same as they are set forth in findings of fact signed by the court and accompanying this decision. While the location of the parcels upon the ground was the matter of some controversy because the described landmarks, such as trees, have long since disappeared, the court is satisfied that the parcels are situate as set forth on plaintiffs’ Exhibit 28. This was established by the testimony of the plaintiffs’ witnesses, and it is significant that the defendants offered no testimony to the contrary, notwithstanding a civil engineer in their employ had made certain surveys upon the ground and was present in the courtroom. The location of the right of way lines as claimed by plaintiffs and set forth in Exhibit 28 ties in substantially with the property, buildings and fence lines of adjoining owners. In fact, the right of way lines as claimed by and acquiesced in by the plaintiffs have in the main been so established and located for many years by the adjoining property owners in the matter of building and fencing, and in describing their lands when conveying same, that the doctrine of practical location would apply. Where a particular line is definitely fixed and located by one or both of two adjoining owners as the boundary line between their lands, and said line is thereafter for several years acquiesced in and steadily adhered to by both such owners as the true boundary line, there arises a presumption that it is the true line. And where a boundary line has been practically located and acquiesced in by the parties for upwards of 15 years (the period now required to establish title by adverse possession), it is generally held that the presumption becomes absolute and that the line is conclusively established. (See Baldwin v. Brown, 16 N. Y 359; Reed v. Farr, 35 N. Y. 113; French v. Wray, 154 App. Div. 343, mod. 155 App. Div. 884; *809 Katz v. Kaiser, 154 N. Y. 294, 298; Lane v. Jacobs, 166 App. Div. 182; People v. Hall, 43 Misc. 117, affd. 105 App. Div. 636; Quigg v. Treadway, 222 App. Div. 164 [2d Dept.], affd. 249 N. Y. 543; McMahon v. Morse, 135 Misc. 233; Whan v. Steingotter, 54 App. Div. 83.)
The defendants own a rectangularly shaped lot of land fronting on Main Street, being 50 feet wide, front and rear, and extending 150 feet deep along the northerly side of the aforesaid mentioned right of way property of the plaintiff Erie. The defendants claim as an appurtenance to their said lot a right of way by prescription over an alleged roadway extending upon and just southerly of the northerly boundary line of the respective properties of the plaintiffs, and extending from Main Street to Commerce Street. The court holds that Strickland and Campbell and later Strickland alone, as the former owners of the lot now owned by defendants, did openly and under claim of right, enter upon and use a driveway located upon the right of way property of Erie and extending from Main Street to the rear of the said lot. The said driveway was used by them for the purpose of ingress and egress to and from a building erected upon the rear of the lot in or about the year 1921. The said building was erected almost flush with the Erie property line, with windows facing said property and with a large door facing and opening toward said property. The building was used by Strickland and Campbell, and later by Strickland, in the public garage business, and commencing in 1921, he, his workmen and his customers daily used this driveway located upon the Erie property for access to the building. They did proceed by car and truck over this driveway, entering from Main Street, proceeding upon the driveway along the south side of the lot of the defendants to the said garage building at the rear of the lot and then did turn to the right and drive into the garage through the door aforesaid; and they did drive out the same way, that is, out of the garage, turn to the left and thence along the driveway back to Main Street. Such use was adverse and hostile under a claim of right and continued uninterrupted by Strickland and Campbell from 1921 to 1932, and thereafter by Strickland. In 1926, the Erie attempted to close the driveway by installing steel rail posts at the Main Street end of the driveway, but Strickland promptly pushed them over and removed them, and the use of the driveway was continued. Again, in 1928 or 1929, the Erie drove several three-foot long steel rods into the ground right in front of the garage door, so that they stuck up a foot or a foot and a half above the ground. Strickland, however, promptly removed them and the *810 use of the driveway to enter the garage was continued, These acts and other incidents occurring between 1921 and 1933 gave clear indication of a claim on the part of Campbell and Strickland that they were using the driveway as a matter of right and in hostility to the title of the Brie, Certainly, these acts put the Brie, on notice, and. thereby a cause of action accrued and the Statute of Limitations began to run. But no action was ever brought by it against Campbell or Strickland, Strickland lost title to the lot in 1933 by foreclosure of a mortgage thereon, but be continued to occupy as tenant the garage building in the rear until the latter part of 1941. Until then, the driveway from Main Street for a distance of 150 feet was openly and adversely used in connection with the garage business.
Following the vacating of this garage building in the rear by Strickland, it was used for about, a year as a pipe factory by a tenant of the defendant Kaplowitn and his partner Alpert (the husband and predecessor of defendant Alpert). During said period, said tenant and its customers did use the driveway adversely, openly and continuously to gain access to the building. Thereafter and continuously to the time of the bringing of this action in 1948, the defendant Kaplowife and his partner used the said building in the rear principally for the storage and sale of the bulkier items in connection with a hardware business conducted by them, and they did adversely, openly and continuously use said driveway for access to such building.
The defendants and their predecessors, for driveway and access purposes, used a strip of land 10 feet wide commencing at Main Street and continuing for- such width, a distance of 31 feet (past the location of the former gate tower building) and from such point thence, the strip used broadened out to a width of 15 feet and continued at such width; to the rear of the lot of defendants (150 feet westerly from west side of Main Street); said strip of land so burdened with the easement being bounded on the north by the boundary line between the said lot of defendants. and the property of the Erie, The use was open, uninterrupted and under claim of right, and thus the law presumes a grant of such way from the Erie as owner of the servient tenement. An easement by prescription was established. (See Ward v. Warren, 82 N. Y. 265, 268; Nicholls v. Wentworth, 100 N. Y. 455, 461; Pirman v. Confer, 273 N. Y. 357; Di Leo v. Pecksto Holding Corp., 304 N. Y. 505, 512; Niesz v. Spencer, 213 App, Div. 476; Hood v. New York Cent, & Hudson Riv. R. R. Co., 163 App. Div. 833, affd. 221 N. Y. 519.)
The particular driveway was clearly and. openly an appurtenance to the lot. The adverse use of the same by Strickland *811 and Campbell as owners from 1921 to 1932; the adverse use thereafter by Strickland as owner for about a year and a half; the adverse use by Strickland as tenant of later owners from 1933 to 1942; the adverse use thereafter by the pipe factory tenant for about a year; and finally, the adverse use by defendant Kaplowitz and his partner Alpert, as owners, were together continuous and uninterrupted, and are properly tacked together to form a continuous adverse user to establish title by prescription. The general rule is that where the successive owners of a dominant estate to which an easement by prescription is alleged to be appurtenant are privies in title to the estate and their possession and use of the easement constitute one continuous possession and use, the periods of their possession and use may be tacked together to establish a prescriptive right to the easement. (171 A. L. E. 1279 and cases cited.) In any event, it is a reasonable inference, and the court finds that, in connection with each successive conveyance of the lot during the period from 1921 to 1948, it was the intent of the parties that each grantee would continue to use the driveway for access to the building in the rear. Such inference arises because the driveway was visibly the general means used for access to this building and, following each conveyance, the use thereof for access purposes continued without interruption. The continuity of the user of the way by or under the title of the successive grantees of the lot to which the way is obviously an appurtenance is an indication that possession of the way was intended to be and in fact turned over with the lot to each successive grantee. Therefore, there is unquestionably the necessary privity between the successive owners of the lot whereby the periods of adverse user under such owners may be tacked to give title by prescription. (See Belotti v. Bickhardt, 228 N. Y. 296; Rogoff v. Vanderbilt Sons Corp., 263 App. Div. 841, affd. 290 N. Y. 666; Lewis v. Idones, 280 App. Div. 980 [2d Dept.].)
The plaintiffs have a title free of all claims of the defendants, excepting, however, the easement found in favor of the defendants for the use of said driveway extending along their southerly lot line to the rear of their lot. There was no proof of either open, continuous or adverse user of any driveway or roadway westerly from the rear of defendants’ lot to Commerce Street.
The pleadings are amended to conform to the proof insofar as may be necessary to support the findings and conclusions hereby made. The motion to strike out the testimony of the witness Coddington is denied.