Howard A. Zeller, J,
This is a dispute between adjoining property owners concerning the location of a common boundary line running north from West Center Street in Canastota, New York, to the rear of their respective properties. The plaintiffs, *879 Marion Van Dusen and Hertha Van Dusen, seek to have the defendants, Vito Lomonaco and Catherine Lomonaco, enjoined and restrained from trespassing upon the alleged property of plaintiffs. The complaint also asks that the defendants he ordered and directed to remove a fence they have caused to he erected upon the plaintiffs’ alleged property without their permission, consent or concurrence. Damages also are sought for the defendants’ acts of alleged trespass. The defendants claim that by virtue of their deed description their true east line runs through the westerly portion of the plaintiffs ’ house. By answer and counterclaim, the defendants ask for dismissal of the complaint, for an order directing the removal of the alleged encroachment and for money damages for plaintiffs’ alleged interference with the defendants’ use and enjoyment of their property.
There is a distance of 9.55 feet between the most westerly portion (a porch) of the Van Dusen house and the most easterly portion (a so-called jog) of the Lomonaco house.
The Van Dusens claim that the boundary line should run parallel to the jog of the Lomonaco house and 3 feet easterly thereof. The Van Dusens’ claim rests upon the theory that this boundary line was acquiesced in since at least 1912 by the prior owners of the properties and that this long acquiescence and the resulting common reputation established such line as the true boundary.
The Lomonacos assert that the disputed line runs through the westerly portion of the Van Dusen house. There are four lots in the block of West Center Street herein being considered. The Lomonacos’ surveyor on his maps made in 1951 designates these lots in a west to east sequence as being the Lindley property at the corner of West Center Street and Buck Street, the Lomonaco property, the Van Dusen property and the Dew property. The structures on these parcels face southerly. According to the title history prior to 1949 each lot has a description frontage of 45 feet and the deed description of each lot is referred to the intersection of the north line of West Center Street with the east line of Buck Street. Lomonacos’ surveyor claims that beginning at such intersection and measuring 45 feet easterly along West Center Street marks the point between the Lindley and Lomonaco properties; that measuring another 45 feet marks the point between the Lomonaco property and the Van Dusen property; and that measuring another 45 feet marks the point between the Van Dusen and the Dew properties. This formula runs the Lindley-Lomonaco boundary through the Lomonacos’ garage and puts more than three quarters of the Lomonacos’
*880 garage on Lindley property; it puts the Lomonaco-Van Dusen line through the westerly portion of the Van Dusen house; and it puts the Van Dusen-Dew line through the westerly portion of the Dew house. The Lomonaco survey is illustrated on the following sketch.

*881 The adoption of the surveyor’s line between the Lomonaco and Van Dusen properties would be unjust and inequitable. It would place a portion of the Van Dusen house on the Lomonaco property. This claim of title to a portion of the Van Dusen house was never made by Lomonacos ’ predecessor in title. A practical location of the division line should be adopted if the Van Dusens ’ theory of acquiescence and resulting common reputation is sound law. “ Traditional evidence is now generally admissible to prove boundaries. Evidence of common reputation and understanding, so far as it definitely exists, is admissible to prove the location of private boundaries.” (Thompson, Real Property, § 3326; see Jones, Evidence, vol. 4, p. 1956; Ford, Evidence, §§ 188, 189, 217.) “Where the exact location of a boundary line is not definitely known, a dispute involving the boundary line must be determined by looking to the conduct of the parties with reference thereto. Thus long acquiescence by the owner of adjoining lands in the location of the dividing line between their lands, may, in effect, establish such line, if the acquiescence be for a period of time equal to that fixed by the statute of limitations.” (Thompson, Real Property, § 3308.)
It even has been said that a supposed boundary line, long acquiesced in, is better evidence of the true location of the line than any survey made after the original monuments have disappeared. (Tarpenning v. Cannon, 28 Kan. 475.) And a practical location long recognized by parties in interest will prevail over even old surveys, the accuracy of which is assumed. (McMahon v. Morse, 135 Misc. 233.) Upholding an innocuous practical location and rejecting a determined true line which dissected structures of both parties, the court in Lane v. Jacobs (166 App. Div. 182, 187) stated: “ It seems to us such location of lines would be unjust and inequitable between the parties ’ ’. (See Whan v. Steingotter, 54 App. Div. 83.) Nor would such a holding be altered by the fact that the practical location was erroneous in its inception (Quigg v. Treadway, 222 App. Div. 164, affd. 249 N. Y. 543), or was established as a result of a mutual mistake of facts. (Reed v. Farr, 35 N. Y. 113, 117.)
Witness Inez Bortle testified that she resided in the Lomonaco (then Milmoe) house from 1912 to 1923 and there was a fence 3 feet east of the Lomonaco property which she considered the boundary line. Charlotte Benz testified that from 1918 to 1924 she occupied the Van Dusen (then Capell) property and sold it in 1934. The abstract of title shows that in 1920 Charlotte May Benz, then known as Charlotte May Capell, and her husband purchased the Van Dusen property and sold it in 1932. Thus, for more than a decade, Mrs. Benz was completely familiar with *882 the two properties. She described a fence between the two properties as running south from the rear of the property to the front porch of the Lomonaco houSe and as being 3 feet from the Lomonaco house. John Proper and his wife, Emily, testified that they occupied the Van Dusen property from 1932 to 1939, that there whs a post 2 or 3 feet from the Lomonaco house, that they planted flowers and rhubarb from the post to the rear line and mowed the lawn up to the post. These were disinterested witnesses and their testimony is considered both true and admissible to characterize possession over the years.
Mrs. Van Dusen, who with her husband purchased their property in 1939, described the post hear the Lomonaco hoüse and told of planting flowers for many years up to an imaginary line leading directly from the post to the rear of the properties. Photographs taken in 1942 and received as exhibits substantiate her testimony. Another photograph taken in 1943 shows the location of the post. Mr. Van Dusen testified that he mowed the lawn to within 2 feet of the Lomonaco house and up to the post. Prior to 1947 the line which was recognized was one running through the post and 3 feet from the jog in the Lomonaco house. There is no evidence that prior to 1949 anyone thought the line ran through part of the Van Dusen house.
Thus there is undisputed evidence that for many years a fence separated the properties and that thereafter a post remained in the ground. The inference is inescapable that from at least 1912 to 1951 the fence and later the post marked the accepted boundary between the Lomonaco and Van Dusen properties. Defendants argue that one post should not be deemed a marker as a line could run through it ih any direction. However, from the evidence and from logic and reason the conclusion is reached that the owners treated the line as running northerly from the sidewálk through the post by the shortest route to the rear boundary.
The conclusion that the boundary as acquiesced in by the owners for several decades should be considered the true boundary is fortified by a map of the neighborhood drawn by C. F. Barlow in 1903 and amended in 1912. This map indicates that the Lomonacó-Van Dusen boundary is exactly where the Van Dusens claim it to be.
Mr. Lomonaco did not believe that the disputed boundary ran through the Van Dtisen house until after the 1951 survey. The Lomonacos purchased their property in 1946 and moved into it in October, 1947. Mr. Lomonaco acknowledges that a post was in existence then and was about 2% feet north and 1 foot east of the northeast corner of his hotise. He *883 removed it in 1951, presumably after the survey had been completed. Mr. Lomonaco testified that the post was 39 to 40 feet east of the Lomonaco-Lindley line; that the garage to the rear of his house was on his property and that a fence now in existence between his garage and the Lindley property marked the Lomonaco-Lindley line. The witness Dew testified a fence existed for a long time 3 feet east of the Lindley house which is approximately where the present fence is between the Lindley and Lomonaco properties. Measuring 45 feet east from the existing fence would place the Lomonaco-Van Dusen boundary 7% feet west of the line the surveyor drew through the Van Dusen house and near to the line as claimed by the Van Dusens. (The day after Mr. Lomonaco gave the testimony outlined in this paragraph he again took the stand and denied that his garage is on his property and testified that it is located on the Lindley property. )
There is a “ settled rule in this state, which forbids the disturbance of a practical location which has been acquiesced in for a long series of years ”. (Baldwin v. Brown, 16 N. Y. 359, 362.) The Lomonacos should be precluded “ upon principles of public policy from setting up or insisting upon a line in opposition to one which has been steadily adhered to upon both sides for more than forty years. If necessary, in order to establish this line, the law will presume a conveyance in accordance with it”. (Baldwin v. Brown, supra, p. 364; Katz v. Kaiser, 154 N. Y. 294; Reed v. Farr, 35 N. Y. 113, 117, supra.)
This court finds that the Lomonaco-Van Dusen boundary line commences in the north line of West Center Street 78 feet easterly from the intersection of the north line of West Center Street with the east line of Buck Street and thence runs 100 feet in a general northerly direction and parallel with the east line of Buck Street. This line will pass through a point approximately 3 feet from the basement wall of the northeast comer of the jog of the Lomonaco house.
The Lomonacos should be permanently enjoined, prohibited and restrained from trespassing upon the Van Dusen premises,
The Lomonacos should be ordered and directed to remove, within 10 days, the fence they erected or caused to be erected on the Van Dusen premises and to restore that portion of the Van Dusen property on which the fence was erected to the condition it was in prior to the erection of the fence.
The Lomonacos’ counterclaim should be dismissed upon the merits.