GLENN L. ALLEN et al., Respondents, v FRANKLIN CROSS et al., Appellants.

Fourth Department, November 3, 1978

#### APPEARANCES OF COUNSEL

*Carmen A. Miller* for appellants.

*Flynn & Anderson (Brian C. Flynn* of counsel), for respondents.

#### OPINION OF THE COURT

WITMER, J.

In this action pursuant to article 15 of the Real Property Actions and Proceedings Law, essentially for determination of the boundary line between properties owned by plaintiffs and defendants and for money damages to plaintiffs because of defendants' alleged encroachment upon plaintiffs' property, trial court decided in favor of plaintiffs that the line was as

shown on Exhibit 9, a map by surveyor Moore. In so holding, the court impliedly disapproved of a map, Exhibit 7, made by surveyor Rhinevault also in behalf of plaintiffs. We conclude that the Moore survey as well as the Rhinevault survey was defective and that the boundary line should be located by reference to the S. L. Tuttle map, Exhibit 8, made in 1950 and recorded with a deed by Anthony Ruocco and wife to Thomas Cosgrove and wife in 1950 of the 16.26 acres of land encompassing the properties now in issue.

In 1961 the Cosgroves conveyed the north part, which we now designate as Parcel "A", of the 16.26 acres to Ernest Jones and wife, referring specifically to the Tuttle map. In that deed, Parcel "A" was described as beginning at the northeast corner of the 16.26 acres, thence running westerly to the northwest corner thereof, thence southerly on the west line 224 feet to a point (about halfway to a gore at the southwest corner of the 16.26 acres), thence easterly to a post in the south side of undedicated Washington Street Extension shown on said map, said post being in the east line of the property, and thence northerly 62.38 feet to the place of beginning. The construction problems involved in this case arise primarily from the facts that said deed from the Cosgroves to the Joneses referred to the west line as 224 feet long and to the east line as 62.38 feet long. Using the Tuttle map, Cosgrove and Jones walked the boundaries as they intended them to be by that deed. Cosgrove died before the trial of this action, but Jones testified concerning those boundaries.

In the year 1961 after receiving that deed Jones built a bridge north of the west end of Washington Street Extension, across the creek at that point, and in the next two years he built a home north of the creek. Washington Street Extension and the bridge were and are the only practicable means of access to that home.

Mrs. Cosgrove and Mrs. Jones were sisters, and in 1969, after Mr. Cosgrove's death, Mrs. Cosgrove conveyed the remaining south part (which we now designate as Parcel "B") of the 16.26 acres to Gary L. Jones and wife, Gary being a nephew of Mrs. Cosgrove and the son of Ernest and Mrs. Jones. In 1970 Ernest Jones and wife conveyed Parcel "A" to defendants, Franklin Cross and Winifred Cross, using the same description as was contained in the 1961 deed to the Joneses. At that time Ernest Jones and Cross walked the boundaries of Parcel "A" and Jones explained them to Cross

with the use of the Tuttle map, Exhibit 8. At trial, defendant Franklin Cross drew a red line on Moore's map, Exhibit 9, to indicate where he understood the boundary line to be.

In 1972 Gary Jones and wife conveyed Parcel "B" to plaintiffs, making reference to the Tuttle map and excepting Parcel "A" from the conveyance. Plaintiff Glenn Allen testified that when he bought this property he was not shown the boundaries and had no idea where the dividing line was between Parcels "A" and "B". Relying on this testimony, the trial court held that plaintiffs were not bound by any previous acknowledgment of the boundary line by the prior owners of the two properties. However, plaintiffs' grantor, Gary Jones, testified that before making the conveyance to plaintiffs, he and Glenn Allen walked "around part of the fields" and Jones showed Allen approximately where the boundaries were, including the post in the south side of Washington Street Extension as the east division point between Parcels "A" and "B", and that the line ran westerly therefrom south of the bridge which crossed the creek and south of the tree (shown on Exhibit 9) between the bridge and the west end of Washington Street Extension. He also advised Allen of the common rights that the owners of Parcels "A" and "B" had to the use of Washington Street Extension. It is noteworthy that plaintiffs did not retake the stand to deny the above specific testimony by their grantor.

In 1972 a flood caused extensive damage in the creek area adjoining defendants' home, and they spent about $5,000 repairing the damage. In the next year additional flood damage occurred and they spent nearly $3,000 repairing it. Plaintiffs asserted that in doing this defendants were encroaching upon their property, and they had surveys made in an effort to establish the boundary line, and then they instituted this action.

The weaknesses of the surveys by Rhinevault (Exhibit 7) and Moore (Exhibit 9) were that those surveyors only agreed on the location of one of the four corners of Parcel "A", namely, the northeast corner, which they believed was an 18-inch pine tree. Ernest Jones testified, however, that before the trial he looked for the northeast corner monument that he had seen in 1961, which he said was a pine tree two feet thick on the north bank of the creek, leaning southerly, and it was not there, and that the 18-inch pine tree referred to by the surveyors was not that monument. Using that 18-inch tree as

the northeast corner, Rhinevault measured 62.38 feet southerly to a point on the east line, and fixed that as the southeast corner of Parcel "A", far north of Washington Street Extension. Moore correctly determined that the "call in the deed" for the southeast corner was the post in the south side of Washington Street Extension and that it required that the post be the southeast monument, and so he properly treated the stated east boundary distance of 62.38 feet as erroneous.

In addition, since Rhinevault and Moore did not agree as to the location of the northwest corner, their measurements on the west line of 224 feet southerly therefrom to locate the southwest corner of Parcel "A" did not agree. The owner of the property north of the 16.26 acres is not a party to this action and could not be bound by any determination herein; and, of course, the location of the north boundary points is not a legal issue herein. Since, therefore, the surveyors have submitted no solid evidence for determining the southwest corner of Parcel "A", we must consider the other evidence.

Ernest Jones, former owner of Parcel "A", and Gary Jones, his son, former owner of Parcel "B", testified not only that the post at the south side of Washington Street Extension on the east line was the southeast corner of Parcel "A", but that a 40-inch white pine tree on the west line of the 16.26 acres was the southwest corner of Parcel "A". Defendant Franklin Cross testified that that was the boundary line shown to him by Ernest Jones when Cross bought parcel "A"; and at the trial he drew a red line on Exhibit 9, Moore's map, to show where he understood that line to be, that is, from the 40-inch pine tree on the west to the 8-inch post on the south side of Washington Street Extension on the east.

The construction of deeds presents a question of law for the court to decide *(People v Hillman,* 246 NY 467, 474-475, 480), based upon the intention of the parties *(Baldwin v Brown,* 16 NY 359, 361; *Horton v Niagara, Lockport & Ontario Power Co. (No. 1),* 231 App Div 386, 390; 6 NY Jur, Boundaries, § 2). Since there is no boundary marker on the north line of the 16.26 acres upon which the court can rely in this action, that line is of no help in finding the boundary line between Parcels "A" and "B". We agree with the trial court that the east line should run from the post at the south side of Washington Street Extension northerly to the northeast corner of the property. By the same token, since there is no firm northwest corner monument but there is substantial evidence

that the 40-inch white pine tree on the west line was the intended southwest corner of Parcel "A", that monument should be adopted. Although it is several feet more than the 224-foot dimension from the northwest corner of Parcel "A" as found by surveyors Rhinevault and Moore (their different locations being many feet apart), it is a corner monument evidencing the intention of the parties, and the specified measurement must yield to the designated monument here as on the east boundary (*Robinson v Kime,* 70 NY 147, 154; *Harrison v New York Cent. R. R. Co.,* 255 App Div 183, 193, affd 281 NY 653; 6 NY Jur, Boundaries, §§ 7, 53, 55-57). Not only did the grantors both of plaintiffs and defendants testify that the 40-inch pine tree on the west was the southwest corner of Parcel "A", but both of plaintiffs' surveyors, Moore and Rhinevault, testified that by "scaling" the Tuttle map, upon which the conveyances were based, the dimensions stated thereon would bring the dividing line between Parcels "A" and "B" south of the bridge and Washington Street Extension.

In the absence of a survey showing precisely where the line will run from the 40-inch white pine tree on the west to the 8-inch post on the east and in light of the testimony that Washington Street Extension was wholly on Parcel "A", and in the light of the survey maps, Exhibits 7 and 9, which show that at least the west part of Washington Street Extension is on Parcel "B", and the testimony of Gary Jones that the boundary line was south of but near the 19-inch pine tree north of the west end of Washington Street Extension and south of the bridge, we conclude that the boundary line was intended to run from the 40-inch pine tree on the west line easterly to the 19-inch tree south of the bridge and north of the west end of Washington Street Extension, and thence easterly to the post in the south side of Washington Street Extension on the east line.

██ The evidence shows that the above line was acquiesced in by the owners of the respective parcels for many years, and that evidence is further support of the intention of the parties (*Quigg v Treadway,* 222 App Div 164, 165, affd 249 NY 543; *Fisher v MacVean,* 25 AD2d 575; *Van Dusen v Lomonaco,* 24 Misc 2d 878, 881; *Erie R. R. Co. v Kaplowitz,* 23 Misc 2d 807, 808-809; 6 NY Jur, Boundaries, §§ 75, 80, 82).

We conclude, therefore, that the judgment should be re-

versed, the boundary line be declared in accordance with this opinion and the complaint for damages be dismissed.

MARSH, P. J., SIMONS, HANCOCK, JR., and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law and facts, with costs, boundary line declared and complaint for damages dismissed, in accordance with opinion by WITMER, J.